**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RENATA STONE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> LOWE'S HIW, INC. et al., ) <br> ) <br> Defendants. ) <br> ) | 2:10-cv-01254-RCJ-GWF <br><br> **ORDER** |

This case arises out of an employee's termination, ostensibly for using vulgar and abusive language in the workplace. Plaintiff alleges she was fired for having filed a worker's compensation claim. The remaining Defendant has moved for summary judgment. For the reasons given herein, the Court grants the motion.

**I.     FACTS AND PROCEDURAL HISTORY**

Plaintiff Renata "Renee" Stone worked for Defendant Lowe's HIW, Inc. ("Lowe's") at one of its Las Vegas, Nevada stores from 2004 until Lowe's fired her on April 12, 2010. (*See* Compl. ¶¶ 4–6, June 15, 2010, ECF No. 1, at 15). Lowe's gave the following reason in Stone's termination notice: "In the course of the investigation it [sic] been discovered that Ms. Stone has used profanity toward fellow employees. This behavior is inconsistent with the expectations of a Lowes employee as is outlined in Policy 316. Policy 316 states that vulgarity, abusive language, and profanity are prohibited." (*Id.* ¶ 7). Stone alleges this was not the true reason she was fired.

(*See id.* ¶ 8). Stone believes she was fired in unlawful retaliation for her having filed for and received benefits under the Nevada Industrial Insurance Act after suffering a lower back injury at work in June 2009. (*See id.* ¶ 10–10(a)). After approximately two months of absence due to related medical treatment in November and December 2009, Stone had returned to work with no restrictions, but two weeks after she received payment for the final settlement of her workplace injury on March 29, 2010, Lowe's fired her. (*Id.* ¶ 10(c)–(f)).

Plaintiff sued Lowe's and Lowe's Companies, Inc. in state court on a single claim of wrongful discharge, seeking back pay, front pay, lost benefits, and other intangible damages, as well as punitive damages and attorney's fees and costs. (*See id.* ¶¶ 13–15). Plaintiff stipulated to the dismissal of Lowe's Companies, Inc. without prejudice. (*See* S. & O., Aug. 11, 2010, ECF No. 11). Lowe's has moved for summary judgment.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears

the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

"Under Nevada law, the absence of a written contract gives rise to the presumption that employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992) (citing

1  *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)).  As Plaintiff has not alleged a written

2  contract, for the purposes of the present motion the presumption of at-will employment applies.

3  At-will employment may be terminated without liability by either party at any time and for any

4  reason or no reason, *Martin v. Sears-Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with

5  limited exceptions based on "strong public policy," *see Hansen v. Harrah's*, 675 P.2d 394, 396

6  (Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when

7  fired in retaliation for filing a worker's compensation claim).

8       Stone admitted at her deposition that she was an at-will employee. (*See* Stone Dep. 7, 10,

9  20, Sept. 15, 2010, ECF No. 18-1).  Stone admitted having signed Lowe's anti-discrimination

10  and anti-harassment policy. (*See id.* at 7–8).  She also admitted that off-color jokes, teasing,

11  demeaning conduct, epithets, slurs, name calling, or obscene gestures could violate the policy.

12  (*See id.* at 14).  She was also aware of Lowe's policy of respect and inclusion towards people of

13  all backgrounds. (*See id.* at 14–16).  She admitted that her performance standards included

14  compliance with standards of conduct. (*See id.* at 17).  She admitted that she knew vulgarity,

15  abusive language, and profanity were prohibited and that harassment of coworkers would not be

16  tolerated. (*See id.* at 21–22).

17       Stone testified that she filed her latest worker's compensation claim in November 2009.

18  (*See id.* at 24).  She never spoke to her supervisor, Steve Cappendyck, regarding her claim. (*Id.*).

19  Stone implied that Lowe's knew about the claim, because she testified that Lowe's didn't contest

20  it. (*See id.* at 84).  She was on worker's compensation for a year, and she signed a form accepting

21  a lump-sum settlement on or about March 22, 2010. (*See id.* at 25).  Stone never told "Maggie,"

22  her human resources director, or anyone else the amount she received. (*Id.* at 25–26).

23       Stone did not learn until the day she was fired that her coworker Rita Watkins had

24  complained to Cappendyck about her. (*Id.* at 26).  Stone denied having told Watkins that "her

25  fucking ass would be out of garden real fucking soon," asking her "What the fuck are you doing

here?," or telling her that she "would fix the fucking schedule and [she] would have to come in

at 5:00 a.m." (*See id.* at 31). She also denied ever having referred to Watkins as "asshole," "dumb fuck," "a fucking dumb ass," or "fucking asshole." (*See id.* at 32–33). She denied having ever used the word "fuck" at work, but later admitted it may have "occasionally . . . slipped." (*See id.* at 38). She denied having ever "been mean" to Watkins. (*See id.* at 41). She admitted she had "probably" said "shit" in front of Wanita "Wendy" Mead. (*See id.*).

Stone admitted having replied to an email from Cappendyck on April 12, 2010, the day she was fired, after an "initial conference that [they] had." (*See id.* at 48–49). Stone had noted in her email response that she may have slipped and used the "F" word or some other vulgar word, but did not use the "F" word regularly and had never used it in front of a customer. (*See id.* at 49). Watkins and Mead were also at the conference. (*See id.* at 50). Stone admitted that she got upset during the conference but denied using profanity during the conference itself. (*See id.* at 50–51). Stone noted at the conference that she believed Watkins was out to get her because of a conflict the two had been having based on Watkins not performing her job properly. (*See id.* at 51).

Lucia Margarita "Maggie" Mejia testified that she was the human resources manager at Lowe's and knew about Stone's worker's compensation claim over her lower back injury. (*See* Mejia Dep. 5, 8, 12–13, Jan. 5, 2011, ECF No. 18-2). Watkins had complained to Mejia in late March about Stone's alleged behavior towards Watkins. (*See id.* at 25–26). Mejia instructed Watkins to inform Mejia's boss, Cappendyck. (*See id.* at 26).

Stone need not show a genuine issue of material fact as to whether she violated Lowe's policies. This question is inapposite, because Lowe's may fire an at-will employee for no reason at all. The question is not whether Lowe's fired Stone for no reason or for a bad reason, but whether it fired her for a reason against the strong public policy of the state as interpreted by the Nevada Supreme Court. Lowe's bears the initial burden of showing, through admissible evidence, a lack of a genuine issue of material fact as to whether Stone's termination was motivated by her worker's compensation claim. Defendant adduces no affidavit or deposition

evidence from Watkins herself, so even if it were the dispositive question, the only evidence adduced concerning whether Stone actually used vulgarities towards Watkins is Stone's own testimony denying it and Mejia's hearsay testimony that Watkins complained to her afterwards. Mejia's testimony is admissible to prove that Watkins reported the allegations, but it is inadmissible to prove that Stone actually made the comments to Watkins. *See* Fed. R. Evid. 801–802.  Lowe's adduces Watkins's handwritten statement concerning the incidents, but although the statement is signed and does not constitute hearsay because it is a party admission as against Stone, *see* Fed. R. Evid. 801(d)(2), the statement is not signed under penalty of perjury, and it is therefore not admissible because it has not been authenticated, *see* Fed. R. Evid. 901.  There is no admissible evidence adduced indicating that Stone made the alleged vulgar comments to Watkins.

Summary judgment is inappropriate where a fact-finder can infer retaliation from an employer's awareness of protected activity and the timing and manner of its subsequent investigation and termination of an employee. *Cf. Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir. 1988) (reversing a district court's grant of summary judgment on a federal age discrimination claim).  Lowe's argues that Stone had filed worker's compensation claims in the past and had not been fired for doing so, but this is likely inadmissible character evidence as to the issue of whether Stone's firing was retaliation for her worker's compensation claim in this particular instance. *See* Fed. R. Evid. 404.  Even if admissible, the evidence does not foreclose the possibility of retaliation in this case and would in fact permit a fact-finder to infer that the latest worker's compensation claim was simply "the last straw" in Lowe's view.

Still, the question is not whether Stone was fired for a bad reason, or for a good reason with insufficient evidence.  The question is whether she was fired for having filed her worker's compensation claim.  Lowe's argues that there is no evidence of a causal link between Stone's firing and her worker's compensation claim.  This is Lowe's strongest argument.  An at-will employee alleging that she was fired for filing a worker's compensation claim must prove that

the wrongful motivation was the sole proximate cause of her termination. *Allum v. Valley Bank of Nev.*, 970 P.2d 1062, 1066 (Nev. 1998). Lowe's notes that the Texas Court of Appeals recently ruled that a four-and-a-half month gap between filing a worker's compensation claim and a firing was too long as a matter of law to support an inference of retaliation when the firing occurred only two weeks after a report of harassment. *See Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 523 (Tex. App. 2006) (affirming a trial court's grant of summary judgment). Here, twice as many months passed between Stone's worker's compensation claim and her termination, and she was fired two weeks after Watkins reported the harassment to Mejia. Based on a lack of evidence of proximate causation, Lowe's has met its initial burden on summary judgment.

Stone responds that she was fired because the lump-sum payout she received two weeks earlier had affected the store's "bottom line." Stone adduces a letter she received from the State of Nevada Department of Administration indicating that she was entitled to $136.78 per month through March 2040 or a lump-sum of $22,510.03. (*See* Letter, Mar. 18, 2010, ECF No. 19-5, at 19). She attests that an internal Lowe's "Dash Seven" report lists expenses chargeable to any particular store, including worker's compensation paid by the company. (Stone Aff. ¶ 15.b, Mar. 21, 2010, ECF No. 19-1). On a date not alleged, Wanita Mead told Stone about the report and noted that worker's compensation affects a store's "bottom line." (*See id.*). Mead was the store manager when Stone was injured. (Mead Dep. 14, Jan. 28, 2011, ECF No. 19-3). But Mead never learned about Stone's worker's compensation settlement until after Stone had been fired, and she never learned the amount. (*Id.* at 27). On another date not alleged, Mr. Andrew Christopher, the store's Loss Prevention Manager, laughingly said to Stone, "You already hit the $50,000 dollar mark." (*See* Stone Aff. ¶ 15.a). Cappendyck testified that he had nothing to do with Lowe's worker's compensation processing system and that he had never discussed Stone's claim with anyone other than Lowe's' attorney (after the present case was filed). (Cappendyck Dep. 59–61, Jan. 5, 2011, ECF No. 19-2). He could not recall the name of the loss prevention

1  officer at the store in 2009 but knew the district loss prevention officer was a Mr. Danny Smith.

2  (*See id.* at 64). Maggie Mejia, the human resources director, also knew about Stone's injury.

3  (*See* Mejia Dep. 12–13, Jan. 5, 2011, ECF No. 19-4). But Mejia never knew about Stone's

4  lump-sum payment. (*Id.* at 24). Lowe's denied that Stone was fired because of her March 2010

5  settlement payment but admitted that a third-party administrator called Specialty Risk Services,

6  LLC paid the settlement. (*See* Def.'s Resp. to Pl.'s Second Set of Reqs. for Admis. 1–2, date, 19-

7  6, at 17).

8  Stone has not met her shifted burden. She filed for worker's compensation many months

9  before she was terminated, and although she was terminated within two weeks of receiving the

10 lump-sum settlement, she has not produced evidence creating a genuine issue of material fact as

11 to whether the settlement proximately caused Lowe's to fire her. Mejia, the human resources

12 director who actually fired Stone, testified that she never knew about any lump-sum payment.

13 Mead, the store manager, testified that she didn't know about the settlement until after Stone was

14 gone and never learned how much the settlement had been for. Mejia fired Stone based on

15 Cappendyck's investigation of the Stone–Watkins controversy. Cappendyck testified that he

16 never discussed Stone's worker's compensation claim with anyone besides corporate counsel, in

17 connection with the present lawsuit. There is no evidence he knew of the lump-sum payment or

18 was motivated by the claim generally. Stone has not met her shifted burden of showing a

19 genuine issue of material fact as to proximate causation.

## CONCLUSION

21 IT IS HEREBY ORDERED that the Motion Summary Judgment (ECF No. 18) is

22 GRANTED.

23 IT IS SO ORDERED.

24 Dated this 9th day of May, 2011.

_____
ROBERT C. JONES
United States District Judge